May it please the court. My name is Jonathan Waldron. I am co-counsel for Tom Dunne, Jr. and will address the Missouri appeal. The Missouri District Court used claim preclusion to dismiss five of nine defendants and then dismiss the remaining parties and claims under the economic loss doctrine. Let me first address why it was error to apply ELD, which will require remand if decided in our favor. The whole purpose behind the economic loss doctrine is to prevent plaintiffs from recasting their contract and warranty claims as tort claims. Missouri courts simply do not apply ELD when there are no contract or warranty claims to assert and the Missouri Supreme Court has never extended ELD to either a negligent or intentional misrepresentation claim. Yet that's what the District Court did here, effectively denying the victim of fraud any avenue to recover. Dunne had no contract claim to assert because RCI did not breach the licenses, which merely licensed Dunne the right to use technology in a certain geographical area if he later purchased the system from defendants, which he never did. Because Mr. Dunne did not purchase the product, the UCC does not apply. Rather, he was induced by fraud to buy worthless licenses. He has no claim for contract damages. Counsel, you have a question. Can you hear me? I can, yes sir. I have just a question. In some states, mostly states that operate under the field code, they draw a distinction between a fraud action which lies in contract and a deceit action which lies in tort. Now, many of the common law jurisdictions merge the two concepts. Now, in at least one field code state, they've gone down the path where they've said that fraud being a contract claim and being a defense in contract, basically an action to set aside the contract, that the economic loss doctrine might apply. But no one's ever actually applied the economic loss doctrine, as I can see, outside of basically a UCC context. Now, what I'm trying to figure out, does Missouri draw a distinction between fraud and deceit, one being a tort, one being a contract claim, or have they just merged the fraud and deceit into a single action, which is what I think most common law jurisdictions have done? My understanding is that Missouri, although it never applied ELD to a tort, the fraudulent inducement or an intentional tort of fraud, they've also not, the Missouri Supreme Court has never extended to the negligent misrep either. But I think there is a distinction in those other jurisdictions of how they recognize that a fraud claim, if it only goes to the performance of the contract, that has a distinction between those that are simply to induce the contract in the first place. Dunn's claim is different because he's not claiming that RCI failed to perform under license agreements, not at all. You can't say that they did perform. They allowed him to have these licenses. But what he is saying is, that's distinct and different from a claim where he's saying, oh, you provided me a product, some equipment, and it didn't work the way it was supposed to under the contract. Thank you. So, as I was saying, Dunn doesn't have a contract claim for damages. He can't bring a contract claim for specific performance or breach of warranty. His only remedy is in tort. As this court recently held in Voigt v. State Farm, Missouri courts have never extended the economic loss doctrine beyond the doctrine's traditional moorings as policing the boundaries between not extend ELD to an intentional tort of conversion. Even more so than conversion, an intentional tort of misrepresentation is incompatible with ELD because one who's been defrauded can't negotiate a contract, is hindered in their ability to negotiate a contract and protect themselves. A federal court's role in diversity cases is to interpret state law, not fashion it. And here the district court erred by extending the ELD in ways Missouri courts have never done or likely would never do. And here are the reasons why. We mentioned one, that Mr. Dunn doesn't have a breach of contract claim. He doesn't have one against RCI or the other eight defendants who weren't even parties to any agreement or contract with Dunn. And despite the district court referring to this as a contract dispute, Mr. Dunn never has brought a contract claim either here in Missouri or in Iowa. Is there a formation dispute here that would lie in contract or is it all lying in tort in your view? It's all lying in tort. Mr. Dunn does not have any claim that the licenses weren't provided to him. He has brought an equitable claim to rescind the contracts, which I understand my colleague Ms. Ward will talk more about with regard to the Iowa action. But I think This is Jed Smith. What was the nature of the Iowa lawsuit against Mr. Dunn? That lawsuit, your honor, was a preemptory filing. I understand, but what was it grounded in, in terms of law? It was grounded in contract by RCI and then Mr. Dunn brought a counterclaim, first an affirmative defense and then a counterclaim for fraudulent inducement. Does that answer your question, sir? Yes. Okay. So we mentioned that he doesn't have a contract claim. The license agreements don't fall under the UCC. Also, the misrepresentations made were to induce a contract, not in the failure to perform a contract. Another important point is that seven of the pre-contract misrepresentations that were made prior to the contract being formed. And none of those representations which are listed on page 49 and 50 of our briefing was even referenced in the contract. So it couldn't have been incorporated into the contract. And also, Mr. Dunn asserts damages outside of the contract. Not in just the way of lost time, but if you look at Compass Bank, which the defendants claim is apply in this case, and footnote three of that case, they recognize the punitive damages can be considered a claim for damages outside the contract. Compass Bank didn't apply it because they felt that the likelihood of punitive damages in that case weren't great, but they are here. We've already obtained that in Iowa on the same type of claims. What role does the disclaimer of warranties portion or provision of the license play in this analysis? Does that do anything to distinguish among the alleged misrepresentations and inducements? Judge Kelly, it does not for a couple of reasons. One is that the, first of all, they disclaimed all warranties in the license agreement. But Missouri courts hold that, and Hess is one of those cases, and I think Murphy was the other one that we cited too, that say, you know, you can't disclaim fraud in the inducement of a contract. That's not something you can do. And so the extent that disclaiming all warranties was an attempt to disclaim fraud, that can't be cognizant here. Let me next address claim preclusion, if there's no more questions on ELD. First of all, Iowa law, substantive law applies here under the United States Supreme Court's SEMPTE decision. I think that's very clear. And there's many reasons why it was aired to apply claim preclusion here. Regardless of whether who was domiciled where, regardless of whether there was privity or not, and regardless even of the lack of a final judgment in the case. First is that Dunn prevailed on his counterclaim. The fact that he won that counterclaim and succeeded, Iowa law, and also federal common law even, provides that, you know, you can't use res judicata against a successful defendant in a prior action who won on their counterclaim. And the second distinction is that he was a defendant, not a plaintiff. This wasn't an asserted against some parties and some claims against one party. He was brought in as a defendant. And under Iowa law, there are no compulsory counterclaims against a non-party. And that's the same thing with Rule 13. Also, the standard proofs are lower in Missouri than in Iowa, and so damages can't be precluded either because the standard for proving damage is less in Missouri than Iowa. And finally, a point that neither of my opponents addressed was the fact that the district court here essentially reversed itself after first refusing to transfer the action and blessing these claims going forward, years later reversed its decision and said that Mr. Dunn should have split up his claims. In the same way that defendants here waited and never asserted as an affirmative defense, which they were required to do, improper claim splitting, never asserted that until after the Iowa action concluded. And Missouri courts and federal courts say you cannot just lie in wait. You're stopped from asserting res judicata in circumstances like that. And that's the Kilch case which we cited of this court from 1997. And lastly, the civil conspiracy claim should be able to go forward in Missouri because that was not considered a compulsory claim in Iowa because the court did not have jurisdiction over other parties that Dunn was not required to join. And those parties were necessary to resolve Mr. Dunn's claims fully against RCI on that issue. So I see that my time is expiring here, so unless there's additional questions, I'll reserve the rest of my time for rebuttal and Ms. Warr will now come up and address the Iowa action. All right. Ms. Warr. Good morning, your honors. I apologize. I think we're having a small feedback issue. Ms. Warr, this is Jeanette in the courtroom. If you could turn your speakers down. Has that fixed the problem? It's a little better. Speak again. Can you hear me clearly? You're a little hollow. Can you hear me clearer now? Yes. Thank you. I apologize for the technical difficulties. Good morning, your honors. I'm going to address the Iowa appeal. After RCI brought a breach of contract claim against Mr. Dunn, he asserted both an affirmative defense and a counterclaim of fraudulent inducement against RCI. The Iowa jury determined that Mr. Dunn prevailed on his affirmative defense and counterclaim. They also found that RCI was willful and wanton in fraudulently inducing Mr. Dunn to enter the licenses. RCI's primary argument, which permeates both the appeal and its cross appeal, is that RCI, not Mr. Dunn, won in front of the jury. That's wrong on the facts and it's wrong on the law. The false legal premise that underlines RCI's argument is that Iowa requires an award of compensatory damages to succeed on an affirmative defense or a claim of fraudulent inducement. In fact, Iowa law only requires a showing of damage, in not an award of a specific amount of damages. In fact, RCI's argument makes no sense in the context of an affirmative defense where specific damages amounts are not sought and are never awarded. And under both Iowa and federal law, including this court's precedent, that's rushed for this court and the criminal opinion in Iowa, the court must presume that the jury made all the factual findings necessary to reach its verdict. And here we know that the jury made a finding that Mr. Dunn was damaged in some manner. We know because of the jury instructions and the jury verdict. The jury instructions for fraudulent misrepresentation Council, we've lost you. Your mic's muted. I apologize. Thank you, Your Honor. One of the instructions for fraudulent misrepresentation, one of the elements that the jury was instructed that it had to find Council, we're getting an echo again. Let's see if you can adjust your audio. Is that better, Your Honor? Yes. Okay, thank you. One of the instructions that the jury, one of the elements that the jury was instructed they had to find for a negligent misrepresentation claim, either as affirmative defense or as an affirmative claim, was that the representation, the misrepresentation that RCI made, was a cause of Mr. Dunn's damage. And that is jury instruction number five at addendum 85. Indeed, when we look at the verdict form, the jury, in response to question number two, affirmatively said that Mr. Dunn proved his claim of fraudulent misrepresentation by clear and convincing evidence. So we must assume, in fact, the jury's finding on punitive damages also supports the jury's finding that there was damage of some type in this case. The punitive damages instruction required the jury to find that RCI caused, quote, actual damage to Thomas Dunn. In awarding punitive damages, this court's found damage in awarding Mr. Dunn punitive damages. RCI asked the court to essentially negate these jury findings and to act as if they don't exist. The court's not, that's not a permissible action for the court, and it shouldn't take that opportunity to, shouldn't follow RCI's direction, which would be error. In fact, the evidence in the case also supports a finding of damages. There was evidence not only that Mr. Dunn paid $400,000, which was uncontested, and did not receive $400,000 back, but there was also evidence that Mr. Dunn engaged, used his time and energy, and unfortunately his business contacts, which were damaged because of the fraud that RCI perpetrated on him, and that Mr. Dunn was those types of damage, while potentially unable to be quantified in an easy and accurate manner, certainly qualify as damage that the jury could have and likely did find. Ultimately, Mr. Dunn had a jury finding that RCI acted fraudulently in a willful and wanton manner, but he was not awarded the uncontested $400,000 that he had paid and had not had returned to him by RCI. For that reason, we are asking the court not only to affirm the punitive damages award, but also to increase the judgment to the uncontested $400,000. Well, what's your authority that this is an appropriate case for attitude? That seems to be a very limited remedy and puts us into an area of potential constitutional import with the jury. Yes, Your Honor. We cited in our brief opinions from the 2nd, 11th, and 5th Circuit, which all analyzed the issue of an increase in a damages award in the context of a case like this, where there was no question about the amount of damage, here the $400,000, which was uncontested. In such a case, it is not considered additive. It's considered outside of what would be a true additive, as those courts have found. Is it your interpretation of the jury instruction is that the court told the jury that if you find damages, it must be $400,000? I think that if you look at the jury instructions, the fact that the jury instruction next to the amount of compensatory damages noted $400,000 for the amount Mr. Dunn had paid and was never returned, that that could be interpretation that that is the amount they should be considering. Well, it says that's the amount they can consider, but it also gives them or seems to give them the discretion to determine what amount he's entitled to. Yes, Your Honor. I think the general law is that often juries have discretion in the amount that they may award, depending on the factual circumstances of the case. Most often, there are contests to the amount of damages. Here, that happens not to be the case. So the jury instructions themselves tell the jury what the law is and not what the facts are with regard to what they heard. It's up to the jury to look at the facts and apply it to the law. And here, there's no evidence that there was any contest about the $400,000. RCI hasn't put forth any evidence that that money was returned or that Mr. Dunn received any benefit from the licenses. In fact, he was damaged in his business relationships. Would that be a damage? You've argued that there are a number of types of damages that Mr. Dunn could have suffered in support of this verdict overall. Couldn't the jury have found those sort of undefinable damages, but not the $400,000? In other words, if it's true that there are other damages he suffered, then doesn't that counter your argument that he automatically should get the $400,000 just because of the jury found in his favor on the claim? Yes, Your Honor. We do believe that the $400,000 was uncontested and therefore that increasing the dollar amount is uncontested. But it seems to me, wouldn't it still be, it seems that given the jury instructions that you have kind of gone through with Chief Judge Smith, that while the dollar amount that he paid out may be uncontested, still trying to figure out based on your overall argument how damages are automatically $400,000. Yes, Your Honor. I think there's two answers to that. The first is that for this type of claim, which is a claim of fraud in the inducement, the damages that were paid for the fraudulent inducement to enter the contract are necessarily the type of damages that would be awarded if the jury finds liability, which they did here. But secondly, even if there is some question about whether those particular damages were found or whether the jury based its finding of damage on other types of damages, that simply means that the case should be remanded for the district court to determine Mr. Dunn's equitable claims, which it declined to do. You know, when there's an argument that's presented that says that there are, you know, the $400,000 was obviously contested in closing argument. That's just a fact, right? And so there's a question that's presented to the jury. The jury reaches a decision. At no point when this jury comes in, is there any discussion that we have an internally inconsistent verdict? There's no discussion about a judgment NOV. There is no question about correcting the verdict to reflect the actual damages that have been proven and that the verdict's against the great weight of the evidence. All this happens in a motion that takes place days later when you're sitting in front of a jury and that jury still had the ability to go out and deliberate, right? And if you'll look at these instructions and you look at this verdict form, the jury followed precisely each of the jury directives, right? And we end up in a place where you don't like it. The other side doesn't like it. You got a really plain old fashioned editor or you're arguing that this thing is internally inconsistent and we're going to have all kinds of constitutional problems on the editor piece, I think. So we're left with the jury verdicts inconsistent and nobody's really ever made that argument. Yes, your honor. I think that's because our alternative argument is that we have two was uncontested. But to the extent that the court does not agree with us there, then there is a way to read the jury verdict as consistent. And that would be that the jury found, as Judge Kelly mentioned, other types of damages that were not either qualified or that the jury could not allocate the damages, whether they be four hundred thousand or some other damage appropriately, because there were other entities and individuals involved, which is part of the reason that Mr. Dunn initially tried to bring this case in Missouri with all of the appropriate entities involved. And in that case, then this case would require remand to the district court so that it can consider Mr. Dunn's equitable claims, because Iowa law is very clear that if there are damages under a legal claim that are not either equity is able to take care of those claims and that the legal claim is not does not preclude a claim in equity. In fact, Iowa law goes so far as to say that even where an individual recovers one hundred percent of the damages that they seek under the legal claim, that they can still seek rescission under Iowa law because that is a different type of remedy. So to the extent the court disagrees with the argument about increases, the damages that necessarily means that the case has to be remanded for consideration of Mr. Dunn's equitable claims. Counsel, your time's expired. Thank you, Your Honor. For the appellee, Mr. Plunkett. Yes, Your Honor. May it please the court. My name is Bob Plunkett and I represent RCI Tim Danley and Rick Hersey. I'll be issuing an oral argument with respect to the Iowa appeal and Ms. Young will have the Missouri appeal. If the court doesn't mind, I want to jump right to it. I heard some questions with respect to Ms. Warr. Judge Erickson made a point regarding whether this had been raised about the inconsistent verdicts. And I looked at that again yesterday. I looked at it during briefing. This was not preserved by Mr. Dunn. This was referenced, I believe, in one footnote that was not developed with any case law. It did not sufficiently get raised. And even the Ninth Circuit says if you put something and you couch it in a footnote, don't develop it, don't have any law, don't cite to the record, it's not raised for purposes of the appeal. So I again, Judge Erickson, I see exactly what you're saying when you say that. But the fact of the matter here is that we have not specified or damages for compensatory damages on a fraud claim. Punitive damages under Iowa law and the U.S. Constitution cannot follow with that. The idea being compensatory damages or at least an injury is an element of the claim of fraud. I have not seen any case that was raised by Mr. Dunn and I looked and I did not find any case where an element of a claim in a tort such as fraud that had no compensatory damages was upheld. Now, I understand Pringle is a case and that is good law in Iowa. That was not a jury-tried case. In contrast to what Ms. Warren mentioned, there were no jury findings. That was a bench trial. And the importance of that is the court found that there was some spoliation going on with respect to the defrauded, the person who was committing the fraud. Actually, after an injunction was entered, threw away documents that would have allowed the courts to determine the amount of damages. So in Pringle, the court said, I can't determine this, but I know there was actual harm and they got rid of the means for me to tell it. So the punitive damages will be sustained in that. Pringle is distinguishable. And what you haven't heard is Spreitzer. That is the latest pronouncement on this issue from the Iowa Supreme Court. As Mr. Waldron mentions, the job is not to fashion the law of Iowa, it's to interpret it. Here we have a clear case in Spreitzer where there was some fraud that was alleged and there's a footnote. And I know in the briefing there was an issue. It was this dicta and I sent a letter to the court. Even if this were dicta, that is very helpful from the Supreme Court of Iowa. It's helpful to this court to determine how the Supreme Court would determine these issues. And the Spreitzer quote is punitive damages would only be recoverable if Spreitzer recovers compensatory damages. If Spreitzer fails to prove damages caused by reliance on misrepresentation on retrial, punitive damages will not be recoverable. That directly addresses the issues we have here. And it pronounces that the punitive damages cannot stand. With respect to the constitutional arguments under the U.S. Constitution and the Iowa Constitution, which can be read in conjunction here, we have three guideposts from Gore. And we have that there is a disparity of actual or potential harm suffered by the punitive damages versus the punitive damages of 200,000. This court knows from the briefing I quoted Judge Posner who said that the ratio of 20 million to zero is not 2 to 1 or 100 to 1 or 20 million. It's undefined like any other division by zero. Mr. Dunn is asking that this court allow a punitive damages amount to be sustained where it is undefined. And I would submit that that flies in the face of the second guidepost. So that weighs strongly in favor of RCI that this should be stricken. I also cited the third guidepost and I will get to the first. In the third guidepost we have civil penalties. I believe since the briefing the civil penalty was increased to 13,000 approximately and it was at 10. So, again, we have nowhere near 200,000. So we have two guideposts that weigh in favor of RCI. Let's turn to the first guidepost. And I will concede that the Eighth Circuit has said and this court has said that this is something that is an important guidepost when looking at these, like the most important guidepost. But this court has also said as recently as 2020 in the Adelie case to be careful to not overstate reprehensibility of the conduct. So typically we have five factors in the first guidepost. Three of which are not contended whatsoever in favor of RCI. That is that this was economic harm and not physical. That this was not pertaining to the health or safety of others. And that Mr. Dunn and his father both were financially wealthy. So they were not a vulnerable target. This really hits the crux here in this case with respect to whether the conduct involved repeated actions or whether it's an isolated incident. And remember there was one, well, there are two payments of 200,000, but all at one time for $400,000. But then the second factor here that's contended is that the harm was the result of intentional malice, trickery or deceit. I would submit to you that this repeated actions thing, if we take Mr. Dunn's argument and if we were to assume that is true, which I debate in the briefing, we only have two factors of one guidepost. So two out of five and the other two guideposts weigh strongly in favor of RCI. So constitutionally speaking, this should not stand. I understand your argument through what you're calling the guidepost, but somehow I can't shake the idea that this is really half of what the compensatory was requested. If we started a baseline of the 400,000, that was the amount paid out. It's half of that. So we're not talking a multiple eye of that. And I realize that that's not one of the guideposts, but that's something sort of to consider in this kind of case. Judge Kelly, I think you're right. I think the jury looked at it and they may have fought 200,000 and it would have made our lives easier and everyone here if they put 200 and the compensatory damage is called. But the thing is that they didn't and they didn't find any harm to him. So that causes these problems. So I don't know. As I recall, the jury instruction was if I'm trying to remember it from my visual, but the sort of didn't make it into a stepping stone for the jury. In other words, find compensatory. And then if that then punitive, it was it sort of lumped damages in together. Am I remembering that accurately? You're remembering it pretty accurately, Judge Kelly. It said that you can consider punitive damages and then it said that you can consider the 400,000. And this may go to Judge Erickson's point with respect to they follow these instructions to the T. So there still is. And this is where we get into whether there's inconsistency. There must be inconsistent facts. And I believe that the jury followed what was given to them. And when you find zero dollars in compensatory, that by law, by operation of law means no matter what the jury wants to do on punitives, it should be thrown out. And so that's to your question. Do we consider the 200,000 dollars on punitives as in this case? And the answer that I have legally is we legally we cannot because you cannot bootstrap punitive damages as its own harm. And if that were the case, then Iowa law would be turned on its face and say anything with punitive damages necessarily means harm was shown was shown.  Well, counsel, what what of the consideration? And I think this is where the district court was going. Was that the that harm was shown a compensable harm, but it didn't have to be put. It didn't have to have a dollar a dollar figure on it in order to be a finding of harm. Well, and respectively, I think that the court, when it referred to that judge in the order, referenced the jury trial in Pringle. And I think that was incorrect because Pringle was a best tried case. So the jury here did not make that finding of actual harm necessarily by zero. And we cannot substitute that. This gets in a little bit of editor. We cannot substitute our thoughts on what could be done in addition to zero. They made no finding of actual damages. They had to make a finding of any dollar amount. And again, there's a case in Iowa that there's a nominal damage award. That would be OK. We don't even have the dollar here. So that goes into Beard, which I'll distinguish very quickly. That involved never instructed that they had the ability to award a nominal damage in this case. And in fact, if you look at the elements of proof, they had to have at least found nominal damage in order to award the punitive damages if we presume that they followed the instructions. Right. Because if you look at what the elements are, there's an element that requires the proving of an actual damage. Right. And so the debate really is about, well, is there a number that you can put on it or not? And this jury was never fully instructed, in my view, in the sense that nobody ever instructed them that if you find the elements have been proven but cannot determine an actual loss, that you can award nominal damages, which are usually one dollar, I mean, which is kind of the way I see juries instructed. Well, it's the way I always instructed them. And it's the way they've been instructed in the courts where I've worked forever. I mean, I'm I'm just having a hard time reconciling what they were told. But it does appear to me that that you can logically conclude that had they been aware of the ability to award a nominal damage, they would have because you can't explain two hundred thousand any other way. And I see my time is up. May I respond to that point, Judge? Yes, you may. So the there is this idea of nominal damages. There was no request after to amend to make it a dollar. There was none of these requests to actually get that before the court below. So we don't have that here on our record. And that's that's what leads me to this. This point where zero as a matter of law necessarily means the punitives have to be stricken. So, again, I see my time is up. If there are no other questions, I'd like to push this over to Miss Young. Thank you. Miss Young. Good morning, your honors. So I am going to, again, be taking you back to the Missouri case that Mr. Waldron addressed early on. And I am actually going to start by discussing the issues of the race judicata. And I think that it's important to note that, you know, Mr. Waldron didn't address the federal common law on the race judicata. I think that when you look at the briefing, it's clear that if federal common law applies in this case, race judicata will actually serve to bar the Missouri action. Why wouldn't why wouldn't Missouri law apply or why wouldn't the state law apply of that where the case was held? Well, your honor, I would say two things to that. Number one, I would start by saying that if Iowa law were to apply, the result in this case isn't going to change. Iowa law recognizes the same purpose of race judicata and eliminating duplication of litigation. They look at the application of race judicata in much the same way that the federal law, federal common law does. And there is, you know, aren't there mixed questions of fact and law under the Iowa analysis if it has to be done? Because doesn't somebody have to decide the issues of privity, the issues that are based on the fact findings? And and is it appropriate for for us to say Iowa law is going to be the same when, you know, Judge Nosh never got to it? I mean, when did when it seemed more appropriate that it goes back to Judge Nosh to analyze under Iowa law? Having been led down this primrose path that federal law applies and nobody having asserted that. Well, wait a minute. You look where the case was tried because that's where that's where preclusion lies. And and so Judge Nosh does exactly what both parties argue. And now on appeal, somebody comes up with new theories that he applied the wrong law and it's plain error to apply the wrong law. And, of course, it is plain error to apply the wrong law if it is the wrong one. Isn't ultimately the situation here that there are mixed questions and that somebody's got to look at the record of the Iowa courts in order to make this decision? And shouldn't that be a trial judge, not an appellate judge? Your Honor, I would say that, number one, just on the facts that are in the record, it's clear that race judicata would apply. You raise the issue of privity. I don't think that there's any question between any of the parties in this litigation that there is a central factual nexus in this. In between these two cases, both of these cases clearly are alleging that, you know, both of these cases deal with the issue of the sales of this PAD system and the license agreements that came out of that sales pitch to Dunn. I have a question about that. You've got RCI and I think it's Danley and and Kersey who are, I think, folks agree, either employees or working on behalf of RCI. I'm puzzled, though, about how folks who are not employees of RCI are not signatories to the license agreement, but sort of in my reading of the record stand to benefit from RCI and Dunn entering an agreement, but are not part of it. How are they in privity with RCI? Well, again, your honor, it goes back to two things. One, you have a central factual nexus between the claims that are alleged. Also, if you look at the cases on race judicata, they always travel to damages. And so even though you have different parties that, you know, Dunn is going after here and you have these other companies that, as you say, you know, are sort of second hand parties to the agreements that were reached. The damages that plaintiff seeks are the same damages across the board. And so your view is that because the damages are the same, that that collapses with the privity analysis. Right. Yeah. Yeah. What our analysis is, is that when you look at these race judicata claims, they focus in on what damages are being sought by the plaintiff. And so, you know, ultimately what we're what we're talking about here is that the Iowa damages are exactly the same damages that would be sought in Missouri. And so we're trying to apply race judicata to prevent the plaintiff from having gone forward through a trial in Iowa on the claims for these same damages. Receiving zero dollars in compensatory damages and then suing additional defendants in Missouri for those same damages. And so, you know, what our argument is, is that there is privity between these parties, because, again, when you link that when you look at the fact that these damages are the same and they all occur under the same factual nexus, that that provides privity for purposes of race judicata. And so without further questions on the race judicata question, I would like to turn to the economic loss doctrine briefly since my time is running a little bit short. And I want to give everybody a chance to ask me questions on that as well. And so on the economic loss doctrine, I think that what we have looked at is that, again, the central purpose of the economic loss doctrine is to prevent the tort recovery for losses that sound in contract. This is a principle that we have seen developing in Missouri law and has consistently been developing to apply the economic loss doctrine outside of the UCC. And and we do admit that this circumstance is new, that there is not a direct Missouri Supreme Court case that we can point to and say that, you know, the Missouri Supreme Court has said that the economic loss doctrine will apply in this. Since you are running a little short on time, I'll interrupt you with a couple of questions about when you're talking about inducement and you're talking about some of the statements that were alleged to have been made to induce Mr. Dunn to enter this license agreement, which is which is a slightly different type of contract, I think. But putting that aside, you know, things like, oh, there's there's, you know, a line of people behind you who want to purchase these. If you don't do it now, you're out of luck. Or this has been a successful system in these different areas of the world. And this is going to be great. Are those fundamentally different in the inducement than then sort of warranties or promises that are encompassed in the license agreement? I'd like you to address that sort of distinction between those kinds of misrepresentations. Right. And your honor, I understand where you're saying that it's, you know, sort of a pre contract versus a contract. I would say two things. Number one, Missouri courts have found that where you take those pre contractual statements or potential tort claims and fold them into the contracts, that that will actually bring it within, you know, again, bring it within the contract. And I don't think by two examples, at least the example of there's other people in line to to to sign up. If you don't do this today or tomorrow, you're you're going to be out of luck. I don't think that's anywhere in the license agreement. So let's talk about something like that. Is that separate and apart from the contract such that it would not fall within the economic loss doctrine? Well, again, that what that promise is talking about is inducing them into the contract based on there being a market, you know, for these services. Again, there is a warranty in the contract that I think addresses that. And so the damages are going to be the same. It always, again, goes back to the fact that what they're saying is that, you know, they're not happy with this contract. They don't believe that the defendants have performed under this contract. They they, you know, never had a functioning product and a market to sell it in. This is Judge Smith. Why doesn't the vote case control that the facts here simply aren't the kind of facts where the economic loss doctrine would be applicable? Your Honor, I don't believe that the vote controls simply because it is distinguishable on this case. Ultimately, the federal courts in Missouri have consistently found that the Missouri Supreme Court would rule in favor of application of economic loss doctrine in this type of or not. I mean, you know, in fraud contexts that and in this type of a situation, generally speaking, I don't think that Voight goes so far as to overturn, you know, those prior rulings. I think that instead, you know, it's it's a more limited ruling. It still acknowledges the purpose of the economic loss doctrine. It still acknowledges that the Supreme Court in Missouri has not ruled on that yet. But I don't think that it does anything to explain away or or eliminate the line of cases that we've pointed to in Missouri that we think supports application of the economic loss doctrine in this type of a circumstance and that the Missouri courts are heading in that direction. Thank you, Ms. Young. Thank you, counsel, for all parties in both cases. We thank Mr. Walker. I have like I thought I had some rebuttal time remaining, but I think there was maybe less than a minute. But if we whatever you have, we'll give you a clerk. How much time does Mr. Walker have for rebuttal? It's on the clock there. 14 seconds. OK, thank you, your honors. First of all, Kimmel v. Iowa controls the res judicata case here because regardless of any privity issues, it says that the res judicata doesn't extend to the benefits of claim preclusion to vicariously liable non-parties on issues of liability only when the judgment goes in the injured party's favor. And so privity doesn't matter. We address the Iowa law issue to the judge knows down below on a rule 59 motion, and he still didn't address it here. This court has the ability to decide that claim preclusion shouldn't apply at all here or yell D. And the last point I'll make is that, you know, in Iowa, even failing to consider equitable, failing to consider even address equitable damages when there was clearly not an adequate remedy of law for what they had to do with failure to state what nominal damages were or what or they had difficulty allocating those among other defendants. That's something that the court should have considered because the amount of damages, that $400,000 is a different measure of damages when it's to rescind a contract, which Iowa law and federal law says you have the right to do whenever you've been defrauded and that's been found. And so he has the right to do that. And that claim wasn't decided on the merits in Iowa. It still can be decided on the merits down in Missouri. It's not precluded there against RCI. If there's any other questions, I'd be happy to answer them. Thank you, Mr. Waldron. Thank you also to all counsel. We will take the case on advisement, consider the arguments that we've heard this morning in conjunction with the briefing and render decision in due course. Counsel may be excused.